THE EVANS-MONTAGUE COMMISSION COMPANY

*v.*

H. B. SPAULDING, for use, etc.

*Opinion filed October 23, 1907.*

1. GARNISHMENT—*when a stipulation is not binding upon garnishee.* A stipulation signed by the plaintiff in an attachment suit and the attachment debtor, to the effect that a certain manuscript contained the testimony of certain witnesses in a former bankruptcy proceeding against the debtor, is not binding upon the garnishee; and the latter is entitled to have the fact that the testimony, as contained in the manuscript, was actually given at the former trial established in some proper manner before the manuscript can be admitted as against such garnishee.

2. SAME—*what does not render purchaser of cattle liable as a garnishee.* In an ordinary attachment proceeding by a bank against a non-resident debtor in which a live stock commission company is garnishee, the mere fact that certain cattle purchased by the commission company from a third person had been included in a mortgage from the attachment debtor to the bank before they were sold and delivered by the said debtor to such third person does not render the commission company liable as garnishee, since the debtor, under such circumstances, has no right of action against the commission company for the value of the cattle.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. B. R. BURROUGHS, Judge, presiding.

The National Live Stock Bank of Chicago, the beneficial appellee, brought suit in attachment in the circuit court of St. Clair county against H. B. Spaulding and summoned the Evans-Montague Commission Company, the appellant, as garnishee. Written interrogatories filed by the plaintiff were answered by the garnishee, and to the truthfulness of its answers plaintiff filed its denial. Spaulding was served by publication and defaulted, and judgment was entered

against him in favor of plaintiff for the sum of $14,543.19. A jury trial was had on the issues raised by the answers and denial filed thereto. At the close of all the evidence the garnishee moved the court for a peremptory instruction to the jury to find the issues in its favor. This motion was denied. A verdict was returned in favor of plaintiff and against the garnishee for $7250. The court, after overruling a motion for a new trial, entered judgment on the verdict. The garnishee appealed from the judgment of the circuit court to the Appellate Court for the Fourth District, and from the judgment of that court affirming the judgment of the circuit court this appeal is prosecuted.

On November 10, 1902, and for a number of years prior thereto, Spaulding was extensively engaged in the cattle business in Texas and Indian Territory. On that date he executed a chattel mortgage, covering 6371 head of cattle of various ages, to the Strahorn-Hutton-Evans Commission Company to secure an indebtedness to it of $164,433.76, as evidenced by a number of notes which became due May 10, 1903. The brand owned by Spaulding was known as the "Lazy S" brand. About 2800 of the mortgaged cattle were marked with that brand and the remainder with other brands. They were all in Spaulding's Cloud Creek pasture, in Indian Territory. On October 23, 1903, the mortgage and notes secured by it were sold and assigned by the commission company to the National Live Stock Bank of Chicago. During the same month Spaulding sold to J. A. Todd 1003 head of one and two-year-old cattle, all of which bore Spaulding's brand and none of which seem to have been included in the Spaulding mortgage. They were re-branded by Todd and thereafter kept in the Tom Flint pasture, about twelve or fourteen miles from the Cloud Creek pasture, until December, 1904, when they were taken by Todd to Denison, Texas, to be fed for market. In November or December, 1903, Spaulding having become insolvent, the agent of the bank, a man by the name of Gray, foreclosed

the mortgage. He could only find 3438 head of the cattle covered by the mortgage, the most of which were in the Cloud Creek pasture. He took possession of these cattle for the bank. They were sold and the proceeds thereof applied on the indebtedness to the bank, which has never been entirely satisfied. After the assignment of the mortgage and notes to the bank the commission company was dissolved, and Mr. Evans, who had been an officer of that company, organized the Evans-Montague Commission Company. Todd having become indebted to the last named commission company, executed to it a mortgage on a large number of cattle, including the cattle bought from Spaulding. In the latter part of March, 1905, he shipped to the company several consignments of cattle, among which were part of the cattle bought from Spaulding. As the cattle were sold Todd was credited by the company with the proceeds on his indebtedness. After the foreclosure of the Spaulding mortgage Gray continued his search for the missing Spaulding cattle and was at the National Stock Yards in East St. Louis after the Todd shipments arrived, and he, together with one E. H. Berry, a cattle inspector at the stock yards, discovered, as they testify, among the cattle shipped by Todd, 390 head of steers four years old or older bearing the Spaulding brand, 210 of which are claimed by the bank to be cattle then owned by Spaulding. These 210 cattle were sold, with the others, by the Evans-Montague Commission Company and the proceeds applied on Todd's indebtedness to it. The bank contends that the garnishee is liable to Spaulding for the amount realized from the sale of these 210 steers.

Appellant urges, among other alleged errors, (1) that the court erred in passing on objections to evidence; (2) that the court erred in refusing to direct a verdict for the garnishee at the close of all the evidence.

VICTOR KOERNER, and B. H. CANBY, for appellant.

Wise & McNulty, (Preston C. West, of counsel,) for appellee.

Mr. Justice Scott delivered the opinion of the court:

In this suit the National Live Stock Bank, the beneficial appellee, recovered a judgment against Spaulding, the nominal appellee here, by default. There was then a trial of the question whether the commission company, the garnishee, was indebted to Spaulding in any amount which could be reached by garnishee process, and that trial, as above stated, resulted in a judgment against the garnishee for $7250.

The theory of the bank in this court is, that among the cattle which Todd shipped to the garnishee were 210 steers four years old or over which did not belong to Todd but which were the property of Spaulding; that the garnishee having sold these cattle and having the proceeds in its possession was liable for the same to Spaulding, and in this suit should be required to respond as garnishee. The sum for which the judgment was rendered was the amount realized from the sale of the 210 cattle.

Appellant questions the action of the court in overruling its motion, made at the close of all the evidence, for an instruction directing the jury to return a verdict in its favor, and insists that there is no evidence tending to show that these cattle belonged to Spaulding at the time it received them.

Spaulding's chattel mortgage, now held by the bank, covered several hundred steers which would have been four years old and several hundred which would have been five years old in March, 1905, when Todd's shipments were received by appellant, all branded with the "Lazy S," and those representing the bank state that when the Spaulding mortgage was foreclosed many steers were not found. Appellant's contention is, the 210 cattle in question were part of the two bunches,—one containing 789 head and the other

214 head, aggregating 1003 head of cattle,—which Spaulding sold Todd in October, 1903. The bank endeavored to prove that among the cattle sold by Spaulding to Todd there were, at the most, but 180 that could have reached the age of four years by the latter part of March, 1905. When the Todd shipments were received in the yards at East St. Louis, Berry and Gray, who testified for the bank, stood opposite an open twelve-foot gateway through which the cattle were driven and counted the steers which, in their judgment, were four years old or over, and found the number to be 390. The other cattle shipped by Todd were younger. Deducting from the 390 the 180 which the bank figures Todd may have then owned of that age of those which he purchased from Spaulding, leaves the 210 head for which the recovery was had in this suit and which the bank urges were the property of Spaulding when received by appellant. The entire 390 head had been in Todd's possession and were by him delivered to appellant, and from the testimony of Spaulding and Todd it would seem that all these steers were among the cattle purchased by Todd from Spaulding in October, 1903.

For the purpose of showing that there were but 180 cattle of this age among those which Todd had purchased from Spaulding, the bank introduced in evidence, over the objection of the garnishee, what purported to be transcripts of portions of the testimony of Spaulding and Todd taken in a bankruptcy proceeding brought by certain creditors of Spaulding in the western district of Indian Territory at Muskogee, Indian Territory, from which it appears that Todd testified, in speaking of the bunch of 789 cattle which he purchased from Spaulding, "If I am not mistaken they claimed 60 head two years old and the rest yearlings," and from which it appears that Spaulding made a statement not substantially different. Spaulding testified in open court, on the part of appellant, in the trial of the case at bar, that it was his understanding that of the other bunch of 214 head which he sold to Todd 120 were two years old and the

remainder yearlings. When he was so on the stand in this case he stated that he could not tell how many of the 789 were two years old when they were sold. He was then asked, on cross-examination, if he had not in the bankruptcy proceeding testified that of the bunch of 789 head 60 were two-year olds and the balance yearlings, and he replied that he had, but that his testimony in that regard was an estimate based on the statement made by the cow boys who had shipped the cattle from Texas prior to their sale to Todd. Cattle that at the time of the sale to Todd in October, 1903, were yearlings could not have been four years old in March, 1905, and cattle that were then two years old could not have been five years old in March, 1905, but might have been between four and five years of age at that time. Consequently, if in one lot purchased by Todd there were but 60 cattle that were then two years old and in the other lot but 120 that were then two years old and the remainder in both lots were yearlings, Todd, in March, 1905, could not have been the owner of more than 180 head of cattle four years old or over which he had obtained from Spaulding in the two lots purchased in October, 1903.

The alleged transcripts of parts of the testimony of Todd and Spaulding taken in the bankruptcy proceedings were admitted under stipulations. The stipulation as to the transcript of a part of the Todd testimony was entitled in the cause and then continued in this language: "It is hereby agreed by and between the parties to the above entitled cause, that the attached sheets numbered from 1 to 7, respectively, being from the testimony of J. A. Todd in the bankruptcy proceedings of National Live Stock Bank of Chicago, Illinois, *et al.* against H. B. Spaulding, heretofore taken before the referee in bankruptcy for the western district of the Indian Territory, at Muskogee, I. T., may be read in evidence at the trial of the above entitled cause in the circuit court of St. Clair county, Illinois, subject only to objections for relevancy, competency and admissibility."

The stipulation that accompanied the Spaulding transcript was of like tenor. Both stipulations were signed by attorneys for the bank and by attorneys for Spaulding. Neither was signed by or on behalf of the garnishee. When the transcripts were offered objection was made and several grounds of objection stated, one of which was that the garnishee was not a party to the stipulations. The objections were overruled and the manuscripts accompanying the stipulations admitted in evidence.

Waiving all other objections, it is clear that Spaulding and the bank could not stipulate that certain manuscript contained a transcript of the testimony of witnesses taken in another proceeding and thereby establish the fact that such manuscript did contain a transcript of such evidence, as against the garnishee. If the evidence was otherwise proper, the garnishee had the right to have the fact that the testimony as recited in the transcript was actually given in the bankruptcy proceeding established by some lawful method. The stipulation of Spaulding and the bank did not lawfully establish that fact as against the garnishee, and the objection to the admission of the alleged transcripts should have been sustained. With such transcripts excluded there would be in the record absolutely no evidence tending to show that in the lot of cattle containing 789 head there were not steers which in March, 1905, would have been four years old or over, in sufficient numbers, when added to those of like age from the lot of 214, to aggregate the 390 head of cattle of that age which were found in the Todd shipments.

As the judgment must be reversed and the cause remanded, we deem it proper to observe that it appears from the two instructions given at the request of the bank that it was the theory of the circuit court, and of the bank in that court, that if these 210 cattle were included in the mortgage held by the bank the bank was entitled to recover against the garnishee in this suit even if Spaulding had sold

these cattle to Todd. Whether these cattle were included in that mortgage was in this suit wholly immaterial, so far as the alleged right of recovery was concerned. This was an ordinary attachment proceeding against a non-resident defendant in which appellant was garnishee. The question was whether it owed Spaulding money which could be reached by garnishee process. If these cattle were sold by Spaulding to Todd and by Todd delivered to appellant, Spaulding would not have any right of action of any character against the appellant for the value of the cattle, no matter whether they were or were not covered by the mortgage.

For the error in admitting alleged transcripts of the testimony said to have been taken in the bankruptcy proceeding, the judgment of the circuit court and the judgment of the Appellate Court will be reversed and the cause will be remanded to the circuit court.

*Reversed and remanded.*